ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III Especial

| LOURDES I. ARROYO SÁNCHEZ<br><br>Apelada<br><br><br>v.<br><br><br>JOAQUÍN GARCÍA TORRES<br><br>Apelante | KLAN202400469 | Apelación procedente del Tribunal de Primera Instancia, Sala de Familia y Menores de la Región Judicial de Bayamón<br><br>Civil Núm.: BY2023RF02187<br><br>Sobre: Divorcio (Ruptura Irreparable de los Nexos de Convivencia) |
|---|---|---|

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 20 de agosto de 2024.

Comparece el señor Joaquín García Torres, en adelante el señor García o el apelante, quien solicita que revoquemos la *Sentencia Enmendada Nunc Pro Tunc* emitida por el Tribunal de Primera Instancia, Sala de Familia y Menores Región Judicial de Bayamón, en adelante TPI. Mediante la misma y en lo aquí pertinente, se impuso al apelante la cantidad de $10,000.00 por concepto de pensión *pendente lite*, pagadera en un término de 60 días.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

Número Identificador

SEN2024_____

**-I-**

En el contexto de un pleito sobre divorcio por ruptura irreparable de los nexos de convivencia, la señora Lourdes I. Arroyo Sánchez, en adelante la señora Arroyo o la apelada, presentó una *Demanda* contra el señor García.[1] En lo aquí pertinente, solicitó que se estableciera una pensión *pendente lite y litis expensas* no menor de $10,000.00.

Por su parte, el señor García presentó una *Contestación a Demanda*, mediante la cual aceptó algunas alegaciones, negó otras y arguyó, entre otras, como defensa afirmativa, que la señora Arroyo no tiene derecho a los remedios que solicita.[2]

Luego de varios trámites, el TPI celebró el Juicio en su Fondo. Evaluada la prueba, dictó *Sentencia Enmendada Nunc Pro Tunc*, en la que entre otras cosas, determinó: "[S]e impone al Sr. García la cantidad de $10,000.00 por concepto de pensión *pendente lite* que deberá pagar en un término de 60 días".[3]

En desacuerdo, el apelante presentó un *Escrito de Apelación*, en el cual invoca la comisión de los siguientes errores:

> COMETIÓ ERROR DE DERECHO EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER AL APELANTE EL PAGO DE ALIMENTOS *PENDENTE LITE* POR LA SUMA DE 10,000.00, A PESAR DE SER IMPROCEDENTE DICHA SOLICITUD Y, ADEMÁS, LA DEMANDANTE-APELADA NO CUMPLIÓ CON NINGUNO DE LOS REQUISITOS ESTATUTARIOS PARA QUE SE FIJE ESTE TIPO DE PENSIÓN Y, ENTRE OTRAS COSAS, NO APORTÓ PRUEBA ALGUNA SOBRE SUS GASTOS Y NECESIDADES APREMIANTES.

> EL TRIBUNAL DE INSTANCIA ABUSÓ DE SU DISCRECIÓN AL IMPONER ALIMENTOS *PENDENTE LITE* POR LA SUMA DE $10,000, CANTIDAD QUE SI BIEN RESULTA EXAGERADAMENTE ALTA, ANTE LA AUSENCIA TOTAL DE

---

[1] Apéndice del apelante, págs. 1-6.
[2] *Id.*, págs. 7-10.
[3] *Id.*, págs. 20-21.

PRUEBA NO TENÍA CRITERIO ALGUNO PARA FIJAR ALIMENTOS.

Luego de evaluar los escritos de las partes, la transcripción de la prueba oral estipulada y los documentos que obran en el expediente, estamos en posición de resolver.

-II-

A.

La ley del *Código Civil de Puerto Rico de 2020*, Ley Núm. 55-2020, en adelante Código Civil 2020, obliga a los cónyuges "a protegerse y a socorrerse mutuamente en proporción a sus respectivas capacidades personales y económicas".[4] Ello incluye, como corolario, la obligación recíproca de proporcionarse alimentos mientras estén vigentes los lazos matrimoniales.[5] Entiéndase, mientras vivan juntos, estén separados o en proceso de divorcio.[6] Así pues, iniciado un proceso de divorcio, la obligación alimentaria se torna en un derecho de los cónyuges a recibir pensión alimentaria *pendente lite*.[7]

El ordenamiento civil vigente define alimentos como "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia."[8] Forman también parte del concepto de alimentos los honorarios de abogado que sean "razonables para sufragar [el pleito de divorcio]".[9]

---

[4] Art. 399 del Código Civil de 2020, 31 LPRA sec. 6652.
[5] Art. 658 del Código Civil de 2020, 31 LPRA sec. 7541.
[6] S. Torres Peralta, *La Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico*, Publicaciones STP, Inc., San Juan, 2006, Tomo I, pág. 6.24.
[7] *Id*.
[8] Artículo 653 del Código Civil de 2020, 31 LPRA sec. 7531.
[9] *Valdez v. Tribunal del Distrito Judicial de San Juan*, 67 DPR 310 (1947).

Ahora bien, el Artículo 454 del Código Civil de 2020 dispone que la pensión alimentaria *pendente lite* estará vigente desde la fecha en que se solicitó, sea esta al momento en que se radicó la demanda o durante el procedimiento, hasta que la sentencia de disolución del matrimonio advenga final y firme.[10] Disuelto el matrimonio, la pensión *pendente lite* deja de tener eficacia jurídica.[11]

Específicamente, el Artículo 454 del Código Civil de 2020 dispone lo siguiente:

> El tribunal puede imponer el pago de una pensión alimentaria al conyugue que tiene bienes propios en beneficio del que no cuenta con recursos económicos suficientes para su sustento durante el proceso. En este caso, la cuantía fijada debe ser proporcional a la capacidad económica del cónyuge a quien se impone la pensión y conforme a la posición social de la familia. La pensión debe cubrir las necesidades apremiantes y esenciales del cónyuge que la reclama y los gastos de litigio. El cónyuge alimentante no tiene derecho a reclamar la restitución de lo pagado por ambos conceptos.[12]

Esta disposición reconoce los alimentos entre cónyuges como una medida provisional y establece como criterios para autorizarlos, "que el cónyuge no [tenga] otros medios económicos para su sustento y que el otro cónyuge [pueda] suministrárselos".[13] Esta norma responde a la realidad jurídica de que los cónyuges continúan su vínculo matrimonial durante la tramitación del divorcio y por lo tanto, todavía son cónyuges para el ordenamiento jurídico y una de las obligaciones mutuas que se deben son los alimentos.[14] Esta medida, como todas las otras, es de carácter provisional.[15]

---

[10] Art. 454 del Código Civil de 2020, 31 LPRA sec. 6801; S. Torres Peralta, *op. cit.,* pág. 6.24.
[11] *Castrillo v. Palmer*, 102 DPR 460, 461 (1974); *Toppel v. Toppel*, 114 DPR 16, 18 (1983).
[12] Art. 454 del Código Civil de 2020, 31 LPRA sec. 6801.
[13] Memorial Explicativo del Código Civil de 2020, pág. 400.
[14] *Id*. Véase, además, *Auge v. Solosse,* 31 DPR 879 (1923).
[15] *Id*. Véase, además, Art. 447 del Código Civil de 2020, 31 LPRA sec. 6794.

Sin embargo, ¿cómo se determina la cuantía de una pensión *pendente lite*? **El monto de la pensión *pendente lite* "será determinado en proporción a las necesidades del cónyuge reclamante y a la capacidad económica y bienes de fortuna de la sociedad conyugal y subsidiariamente del cónyuge reclamado con sus bienes".**[16] De lo anterior se puede inferir que primero responde el patrimonio conyugal y subsidiariamente, el patrimonio privativo de alguno de los cónyuges.

Es pertinente destacar que la suma en concepto de alimentos *pendente lite* se determinará a base del "criterio rector" utilizado para la fijación de pensiones alimentarias, a saber, el principio de proporcionalidad, sujeto "al prudente arbitrio [del juzgador]".[17]

Finalmente, a la luz de una buena práctica procesal, el cónyuge que reclama para sí alimentos *pendente lite* "debe de hacer constar en sus alegaciones los elementos específicos en que se basa su reclamación" y alegar "que la sociedad legal de gananciales cuenta con suficientes bienes de fortuna para dar cumplimiento a las obligaciones alimentarias hacia el cónyuge reclamante".[18] De esta manera, pone al tribunal en posición de ejercer su discreción al fijar las cuantías de alimentos *pendente lite* y *litis*

---

[16] S. Torres Peralta, *op. cit.,* pág. 6.24., *supra.* (Énfasis suplido); *Llorens Becerra v. Mora Monteserin*, 178 DPR 1003 (2010).

[17] *Guadalupe Viera v. Morell*, 115 DPR 4, 14 (1983); *Llorens Becerra v. Mora Monteserin*, *supra*. Véase, además, *García v. Tribunal de Distrito y Ferrer, Interventor*, 69 DPR 517, 523 (1949).

[18] Torres Peralta, *op. cit.,* págs. 6.25 y 6.27.

*expensas sin* "ir más allá de la prueba que tiene ante su consideración".[19]

Sin embargo, el no establecer de modo claro y preciso los elementos específicos de la reclamación no es óbice para reclamar alimentos *pendente lite*. Esto responde a que, para prevalecer, el alimentista no está sujeto "a una obligación específica de prueba".[20] Es decir, a un requisito de forma o a un lenguaje sacramental. Por el contrario, basta establecer que carece de medios "suficientes para vivir",[21] para estar en posición de vindicar su reclamación. En otras palabras, el alimentista puede prevalecer si presenta "cualquier prueba pertinente tendente a establecer que no se cuenta con dichos medios suficientes para vivir".[22]

**B.**

Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene la facultad de sustituir por sus propias apreciaciones, las determinaciones del foro de instancia.[23] Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza un tribunal de instancia.[24] El fundamento de esta deferencia es que el juez de primera instancia tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor situación que el

---

[19] *García v. Tribunal de Distrito y Ferrer, Interventor*, *supra*. Véase, además, por su valor persuasivo, la controversia resuelta por este Tribunal en KLAN202300736.
[20] *Morales v. Jaime*, 166 DPR 282, 311 (2005).
[21] *Id*.
[22] *Id*.
[23] *Serrano v. Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).
[24] *McConnel v. Palau*, 161 DPR 734, 750 (2004).

tribunal apelativo para considerarla.[25] En vista de esta deferencia, los tribunales apelativos no intervendremos con la apreciación de la prueba reflejada en las determinaciones de hechos del tribunal apelado en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[26]

No obstante, cuando las conclusiones de hecho se basan en prueba pericial o documental, el tribunal de apelaciones se encuentra en la misma posición que el tribunal de instancia.[27] De modo que, el tribunal intermedio no está obligado a conceder deferencia a la apreciación de la prueba del foro sentenciador.

### c.

Por otro lado, es norma firmemente establecida que los tribunales apelativos otorgan deferencia a las determinaciones del foro sentenciador, "salvo que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[28] Conviene destacar que "la discreción se fundamenta [,entre otras,] en el contacto con los litigantes y la prueba que se haya

---

[25] *Arguello v. Arguello*, 155 DPR 62, 78-79 (2001).
[26] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 793 (2020).
[27] *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 918 (2016).
[28] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón*, 2023 TSPR 145, 213 DPR __ (2023); *Cruz Flores v. Hospital Ryder Memorial Inc.*, 210 DPR 465, 497 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 338 (2021); *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 273 (2021); *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 276 (2019); *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015).

presentado"[29] ante el foro inferior. Por esta razón, se presume que el Tribunal de Primera Instancia conoce mejor las particularidades del caso y está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar para llegar eventualmente a una disposición final.[30]

De modo que, el ejercicio de las facultades discrecionales por el foro de instancia merece nuestra deferencia salvo que incurra en algunas de las conductas previamente mencionadas y si a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación".[31] Específicamente, el Tribunal Supremo de Puerto Rico ha delimitado las instancias en las que un tribunal abusa de su discreción de la siguiente manera:

> [C]uando no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o cuando, [...] [tras] considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[32]

### -III-

En el pleito de epígrafe, el apelante alega que el TPI erró y abusó de su discreción al otorgar alimentos *pendente lite* sin establecer los requisitos que el ordenamiento jurídico vigente exige. Además, sostiene que la apelada no probó que: (1) no cuenta

---

[29] *Citibank v. ACBI et al.*, *supra*, pág. 736.
[30] *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013); *Mejías et al. v. Carrasquillo et al*, 185 DPR 288, 306-307 (2012). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón*, *supra*.
[31] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020).
[32] *Banco Popular de Puerto Rico v. Gómez Alayón*, *supra*. Véase, además, *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 2023 TSPR 65 (2023); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013) (citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009)).

con recursos económicos suficientes para su sustento durante el litigio; (2) que el alimentante tiene bienes propios o privativos para satisfacer los alimentos; (3) que tiene necesidades apremiantes y esenciales; (4) la posición social de la familia; y (5) a cuánto ascienden los gastos del litigio. Por último, argumenta que el TPI incidió al determinar que el monto de la pensión *pendente lite* es un asunto meramente discrecional del juzgador de los hechos.

Por su parte, la apelada arguye que presentó prueba suficiente para establecer una pensión *pendente lite*, a saber: que solo recibe mensualmente la cantidad de $420.00; que no puede generar ingresos adicionales porque cuida a su madre encamada; y que la sociedad de gananciales cuenta con bienes inmuebles sin hipotecas. A su entender, como existen bienes gananciales, el cónyuge alimentista no tiene que probar necesidad. Por el contrario, sostiene que correspondía al apelante probar que los bienes gananciales existentes no eran suficientes para viabilizar la pensión impuesta y, sin embargo, no lo hizo. Tiene razón. Veamos.

Como expusimos previamente, el monto de la pensión *pendente lite* "será determinado en proporción a las necesidades del cónyuge reclamante y a la capacidad económica y bienes de fortuna de la sociedad conyugal y subsidiariamente del cónyuge reclamado con sus bienes." A nuestro entender, la prueba presentada fue suficiente para satisfacer dicho parámetro normativo. Veamos.

Sobre su necesidad económica, la señora Arroyo declaró lo siguiente:

> P        Le pregunto, ¿a qué se dedica usted doña Lourdes?
>
> R        Ahora mismo soy ama de casa y cuido a mi mamá.
>
> P        ¿Usted cuida a su mamá, por qué?
>
> R        Sí. Porque está en cama encamada y yo estoy con ella, pues casi todo el tiempo, como quien dice. Estoy en mi casa y en la casa de ella.
>
> P        Muy bien. O sea, que debo de entender que usted no genera ingresos de tipo alguno.
>
> R        Ahora mismo el Seguro Social.
>
> P        ¿Solamente Seguro Social?
>
> R        Sí.
>
> P        ¿Cuánto?
>
> R        Cuatrocientos dólares, 420.00 dólares.
>
> P        Okey. Le pregunto, si ese dinero que usted recibe ha sido un dinero suficiente para usted poder hacer su vida.
>
> R        No, lamentablemente, no. No me da.[33]

En cuanto a la existencia de bienes gananciales la apelada declaró:

> P        ¿Durante este matrimonio se amasaron bienes y deudas de carácter ganancial?
>
> R        Ahora mismo deudas y eso, no. Bienes, sí, pero deudas no.
>
> P        Muy bien.
>
> R        Ahora mismo no hay deudas.[34]
>
> […]
>
> P        Doña Lourdes, ¿usted le puede informar al tribunal si esta propiedad donde usted reside se encuentra hipotecada, tiene algún gravamen hipotecario, alguna obligación?
>
> R        No.[35]

Es importante destacar que el apelante no refutó las determinaciones de hecho previamente expuestas. En

---

[33] Transcripción de Vista, en adelante TV, págs. 9-10. (Énfasis suplido).
[34] TV, pág. 7. (Énfasis suplido).
[35] TV, pág. 23. (Énfasis suplido). *Véase*, además:
**P        Mire, yo le, okey. Tiene es la única propiedad que tiene inmueble. Además de eso, usted también tiene un terreno que también está saldo, ¿verdad que sí?** TV pág. 14-15. (Énfasis suplido).

consecuencia, la apelada estableció los criterios necesarios para justificar la concesión de una pensión *pendente lite,* a saber, que tiene necesidad económica y que la sociedad de gananciales tiene bienes suficientes para asumir los costos de la medida provisional en controversia.

Cónsono con la normativa previamente expuesta, una vez se establece la necesidad en la alimentista y la existencia de bienes suficientes de la sociedad legal de gananciales, el monto de la pensión *pendente lite* es un asunto que recae en la discreción del foro sentenciador.[36]

Ahora bien, tras examinar cuidadosamente el expediente y la prueba oral estipulada, no encontramos que el TPI haya abusado de su discreción.[37] Sobre el particular, conviene recordar que "la discreción se fundamenta [,entre otras,] en el contacto con los litigantes y la prueba que se haya presentado".[38] Sobre el particular, el foro *a quo* tiene una ventaja sobre este tribunal intermedio y no encontramos fundamento alguno para intervenir con su determinación.

Por otro lado, el apelante sugiere que la prueba de necesidad exige unos requisitos formales y estructurados que no se observaron durante la vista en su fondo. No tiene razón.

Como discutimos previamente, este enfoque restrictivo es "contrario al espíritu solidario y alimentario".[39] Por el contrario, es una norma jurisprudencial firmemente establecida que en este

---

[36] *Guadalupe Viera v. Morell, supra.*
[37] *Banco Popular de Puerto Rico v. Gómez Alayón*, 2023 TSPR 145, 213 DPR __ (2023).
[38] *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).
[39] *Morales v. Jaime, supra.*

tipo de reclamación "sólo se requiere presentar cualquier prueba pertinente tendente a establecer que no se cuenta con dichos medios suficientes para vivir",[40] y en este caso, dicho estándar se cumplió satisfactoriamente.

Finalmente, reiteramos, que luego de revisar atentamente la prueba oral estipulada, no se configura ninguna de las circunstancias que justifican intervenir con la apreciación de la prueba del foro sentenciador.[41]

-IV-

Por los fundamentos previamente expuestos, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[40] *Id.*

[41] *Gómez Márquez et al. v. El Oriental*, *supra.*